**UNITED STATES of America**

v.

**Ramon MIRABAL CARRION et al.**

Cr. No. 7251.

United States District Court
D. Puerto Rico, San Juan Division.
April 9, 1956.

violence. Sections 371 and 2385 of Title 18 U.S.C. They have filed various motions which for the purpose of discussion herein may be grouped as:

A. *Motions to Dismiss the Indictment on Various Grounds*

B. *Motions Attacking as Unlawful the Selection and Composition of the Jury List of this Court from which the Grand Jury which Returned the Indictment was Selected*

C. *Motions for Inspection of Grand Jury Minutes*

D. *Motions for Bill of Particulars*

### A.

### Motions To Dismiss The Indictment

#### Ground I

In two of the motions to dismiss the indictment the defendants move this Court to dismiss such parts of the indictment in which acts committed prior to October 28, 1951 are alleged. It is claimed that the Statute of Limitations, Section 3282, 18 U.S.C., bars the prosecution for chargeable acts committed prior to said date. This contention is wholly without merit and must be denied. The indictment in this case, returned on October 27, 1954, charges a conspiracy, continuous in nature, alleged to have commenced on or about March 10, 1946 and continuing up to October 27, 1954, the date of the filing of the indictment. It is well-settled law that in a conspiracy charge the period of limitation is computed from the date of the last overt act. Fiswick v. United States, 1946, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196; Brown v. Elliot, 1912, 225 U.S. 392, 32 S.Ct. 812, 56 L.Ed. 1136. In the instant indictment six overt acts are alleged, all of which fall within the statutory period. See also United States v. Flynn, D.C., 103 F.Supp. 925, 927, affirmed 2 Cir., 216 F.2d 354, certiorari denied 348 U.S. 909, 75 S.Ct. 295, 99 L.Ed. 713.

The motions to dismiss on this ground are therefore denied.

---

Ruben Rodriguez Antongiorgi, U. S. Atty., San Juan, P. R., for plaintiff.

Marcos A. Ramirez, Santurce, P. R., Ramon H. Vargas, Arturo Ortiz Toro, Manuel Cruz Horta, San Juan, P. R., R. V. Perez Marchand, Rio Piedras, P. R., Santos P. Amadeo, Romany & Romany, Carlos J. Faure, Tomas I. Nido, San Juan, P. R., J. M. Ramos Barroso, Bayamon, P. R., for defendants.

RUIZ-NAZARIO, District Judge.

The defendants herein have been indicted for conspiracy to advocate the overthrow of the Government of the United States of America by force and

## Grounds II and III

■ Section 3 of the original Smith Act, Section 11 of 18 U.S.C. (1946 Ed.), which punished conspiracies to violate said Act was repealed by the Act of June 25, 1948, c. 645, § 21, 62 Stat. 862, which became effective September 1, 1948. Based on that fact, the defendants allege that the indictment herein should be dismissed on two grounds: First, because the same is founded on a statute no longer in existence; Second, because by repealing said Section 3 "Congress manifested its intention that mere conspiracies to violate the Smith Act, without more, should not be constitutive of a crime."

In this respect the Statutory authority for the indictment is given—as in violation of "U.S.C., Title 18, Section 11 (1946 Ed.), being Section 3 of the said Smith Act while said section of said Act remained effective, and thereafter in violation of U.S.C., Title 18, Section 371 (1948 Ed.)." I can find no error in the citation of former Section 3 of the Smith Act since it is referred to in conjunction with Section 371, 18 U.S.C. (General Conspiracy Statute). But even on the assumption that there be an improper mention of a repealed statute, the well-accepted rule of law is that an indictment charging an offense under some statute in force will not be dismissed for the reason that there may have been an erroneous citation of another statute. Hammer v. United States, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118; Williams v. United States, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509; United States v. Nixon, 235 U.S. 231, 35 S.Ct. 49, 59 L.Ed. 207; see also Rule 7(c) of the Fed.Rules of Criminal Procedure, 18 U.S.C.

In the present indictment the conspiracy statute makes a crime the acts alleged to have been committed prior to September 1, 1948. United States v. Mesarosh, D.C.1952, 13 F.R.D. 180–187.

■ The second contention to the effect that there can be no conspiracy to violate the Smith Act because Section 3, above cited, of the original Act was repealed, has been decided against defendant's contention in a number of cases decided since the repeal of said original Section 3 and in which conspiracy to violate present Section 2385 of Title 18 U.S.C. has been upheld. United States v. Dennis, 2 Cir., 1950, 183 F.2d 201, affirmed Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137; Frankfeld v. United States, 4 Cir., 1952, 198 F.2d 679, certiorari denied 344 U.S. 922, 73 S.Ct. 389, 97 L.Ed. 710; United States v. Fujimoto, D.C.Haw., 102 F.Supp. 890; United States v. Flynn, 103 F.Supp. 925, supra; United States v. Mesarosh, supra.[1]

The motions to dismiss on these grounds are therefore denied.

## Ground IV

Other ground advanced by the defendants to dismiss the indictment is the alleged lack of jurisdiction of this Court upon the basis that the Smith Act, 18 U.S.C. § 2385, ceased to apply in this District upon the establishment of the Commonwealth of Puerto Rico by virtue of Public Laws 600 and 447, 48 U.S.C.A. § 731b et seq. •

■ This contention must be decided against the defendants on the authority of Carrion v. Gonzales, D.C., 125 F.Supp. 819, decided by Acting Judge Snyder, and Arbona v. Kenton, D.C., 126 F.Supp. 366, decided by Judge Weinfield of the Southern District of New York, in which this precise question was raised in this same case. On this point I fully adhere to the views expressed in those opinions.

The motions to dismiss on this ground are therefore denied.

1. The clear explanation for the repeal of Section 3 of the original Smith Act is precisely the fact that the same was unnecessary in view of the existence of the General Conspiracy Statute, 18 U.S.C. § 371. See Revisers Notes, House Report Number 304, 80th Congress, First Session. It is stated in said notes: "Reference to conspiracy to commit any of the prohibited acts was omitted as covered by the General Conspiracy provision, incorporated in Section 371 of this title."

### B.

### Motions To Dismiss The Indictment On The Ground That The Grand Jury Which Returned The Same Was Unlawfully Selected And Composed

The attack on the legality of the jury panel of this Court and consequently on the composition and selection of the Grand Jury which returned this indictment is made by defendant Garcia Rodriguez originally in his motion of July 7, 1955. Other motions of similar import have been filed on behalf of other defendants. On September 8, 1955 defendant Garcia Rodriguez filed a supplemental motion enlarging and substantiating his original motion attacking the jury panel. To this supplemental motion said defendant has attached four exhibits marked A, B, C, and D. A hearing was held at which documentary and testimonial evidence was offered. Defendant's contentions may be summarized as follows:

It is claimed that both the jury list and the Grand Jury which indicted these defendants were unlawfully composed and selected, thus depriving the defendants of their constitutional rights to be tried by a fair and impartial jury because:

(a) The requirements contained in Section 867 of Title 48 U.S.C.A. to the effect that jurors who serve in this Court have a sufficient knowledge of the English language operates as a bar to a selection of a jury representative of this community, since it is alleged that the majority of Puerto Ricans do not have sufficient knowledge of said language.

(b) In addition to the attack on the jury list in connection with the requirement as to the English language, the defendants also impugn the representative character of the jury of this District by stating in their motion that "defendant has reason to believe, and hereby affirmatively alleges, that the jury list, panel, or array from which the Grand Jury which acted in this case was selected, did not fairly represent the entire communi-ty as is required by law and good conscience * * * "

Further on, the defendants allege that "as a result of the situation described in the preceding paragraphs and/or because of a deliberate practice and custom to that effect, defendant likewise honestly believes and hereby alleges, that a substantial majority chosen for the grand and petit jury service in this Court and who are included in the jury list, panel or array, including that which was used in this case, are persons of a financial, social and educational level which is not representative of the community as a whole, and in fact, is exclusive of a substantial portion of the group which actually qualifies for jury service under the statute."

This Court granted to the defendants an opportunity to make a *prima facie* showing in support of the above allegations, and the above-mentioned exhibits A to D attached to the motion of September 8, 1955 purport to be in compliance with the request of the Court. That was also the purpose of the hearing held on October 14, 19, 20, 1955.

■ ■ At the outset and before this Court considers the evidence submitted by the defendants in support of their contention, it might be well to state the rules of law which govern jury challenges. It is well settled that before a jury panel can be quashed on the ground that a cohesive group has been excluded, there must be a clear showing of an intentional and systematic exclusion of said group. Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187; Fay v. People of State of New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043; Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181; United States v. Dennis, supra; Sub Nom. United States v. Foster, D.C., 80 F.Supp. 479, affirmed United States v. Dennis, 2 Cir., 183 F.2d 201; Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137. The Supreme Court has made it abundantly clear in a number of cases involving mostly exclusion of racial and economic groups that disproportion in

the ultimate composition of an indicting grand jury furnishes no basis whatsoever for an inference of exclusion. Fay v. People of State of New York, supra; Frazier v. United States, supra. Moreover, it is essential if a defendant is to succeed in a jury challenge, that it be shown that the group which is claimed to have been excluded is a cohesive one whose exclusion would defeat the constitutional requirements of a representative jury. Young v. United States, 1953, 94 U.S.App.D.C. 54, 212 F.2d 236, 238; Thiel v. Southern Pacific Co., supra; Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181; Dow v. United States Steel Corporation, 3 Cir., 1952, 195 F.2d 478; United States v. Roemig, D.C.Iowa 1943, 52 F.Supp. 857.

In the light of these judicial requirements this Court must therefore find as a question of fact whether there is any basis for the contention of the defendants.

The evidence adduced in support of defendants' motions on this point is in substance as follows:

Exhibits A to D filed with the supplemental motion of September 8, 1955 consist of a list of the 1,450 members of the jury list of this Court with their addresses and reported occupations. There is also contained an alleged geographical distribution of "residential origin of jury list," an alleged "classification of the various occupations of the members in the panel, showing the number belonging to each of such *occupation*," and a list with the addresses of the members of the indicting grand jury.

Defendant Garcia Rodriguez gave an affidavit and later testified at the hearing to the effect that the preparation of these data was made by him. It is to be noted that in Exhibit C it is stated that out of the jury list of 1,450 members, the occupations and addresses of 270 could not be determined.

At the hearing the testimony of the Jury Clerk, the Jury Commissioner, and of the defendant Garcia Rodriguez was heard.

No effort was made by the defendants to classify the members of the jury list according to religious, racial, political, or social status, but reliance was placed on classification by occupations. Defendant Garcia Rodriguez' own analysis, as contained in said exhibit, demonstrates without doubt that the standard used by him to make the occupational classification of these jurors is arbitrary, capricious and has little or no evidentiary value to support his contention. The Government demonstrated in the cross-examination of defendant Garcia Rodriguez and through the testimony of the Clerk and Jury Commissioner that a considerable number of the jurors classified by defendant Garcia Rodriguez under such headings as "executive", "professional," "office, clerical and white-collar employees," actually do belong to the so-called "wage-earners," or "manual workers" class.

The letters offered in evidence, prepared by the Clerk and addressed to numerous organizations representative of all social and economic groups of this community, are very informative of the care and efforts made by the Clerk in seeking the names of prospective jurors. I specifically refer to the letter dated July 9, 1952, (included in Exh. 6 for Plaintiff) addressed to the Secretary of the International Longshoremen Association which in part reads as follows:

"Will you be so kind to give me a list of persons in your organization who can speak the English language for the purpose of placing them in the jury box of this Court?"

—All these efforts have borne fruit, since the evidence clearly shows that a substantial number of the members of the jury panel actually belong to the so-called lower economic and social strata of this community.

I find from the testimony of the Clerk and of the Jury Commissioner that not only is there no exclusion of any cohesive or representative group in this District, but that these officials actively and diligently seek the inclusion in the

jury list of all economic, social, racial, and religious groups. That is particularly and significantly done as regards wage earners.

The defendants insist that the statutory requirement that jurors have sufficient knowledge of the English language operates in such a way as to cause a jury not representative of the Puerto Rican community. I disagree. I venture no opinion as to percentage of Puerto Ricans within the age group qualified for jury service who understand the English language. I strongly suspect that it is much greater than the defendants would have this Court believe, but I do find from the evidence introduced herein and from the judicial knowledge of this Court that all cohesive groups—economic, racial, religious, and social, are adequately represented in the jury panel. I also find that although proportions may vary, a substantial percentage of persons in each of those groups has sufficient knowledge of the English language and is thus qualified for jury service.

 In the light of these findings, the novel argument of the defendants loses its force. As Congress is fully empowered to establish qualifications for jurors for this District, as it has similarly done among the States, Title 28 U.S.C. § 1861, and since it is palpably clear that said Congressional enactment does not operate to exclude a cohesive group from jury service or to deprive the jury of this District of its representative nature, the defendant's claim of a violation of their constitutional right necessarily falls.

The motions on this ground must therefore be denied.

### C.

### Motions Requesting Inspection Of Grand Jury Minutes

Intertwined with defendants' numerous motions to dismiss the indictment on the jury challenge is a request of this Court for an inspection of the minutes of the Grand Jury which returned the indictment. The request is made on grounds which, in substance, amount to the following:

 1. That there was not presented to the Grand Jury legally sufficient evidence to support the indictment. This contention is made without offering to this Court any semblance of a showing to support it. It must be denied on the authority of a number of decisions which traditionally have protected the secrecy of grand jury proceedings. United States v. Long, D.C., 118 F.Supp. 857; United States v. Smyth, D.C., 104 F. Supp. 283; Shushan v. United States, 5 Cir., 1941, 117 F.2d 110, certiorari denied 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531.

 2. The other argument advanced by some of the defendants for the request for the inspection of the grand jury minutes is indeed novel. It is claimed that because the defendants did not have a preliminary hearing before the Commissioner, an inspection of the grand jury minutes should be granted in lieu thereof. The argument is clearly without merit since an indictment having been returned, there is no right to a preliminary hearing. United States ex rel. Perry v. Hiatt, D.C.Pa.1940, 33 F.Supp. 1022; Barber v. United States, 4 Cir., 1944, 142 F.2d 805; United States ex rel. Bogish v. Tees, 3 Cir., 1954, 211 F.2d 69.

Clear as the rule is against the granting of the inspection of grand jury minutes, as well expressed by Judge Hand in United States v. Garsson, D.C., 291 F. 646, it has acquired renewed vitality with the recent decision of the Supreme Court of March 5, 1956, in the case of Costello v. United States, 76 S.Ct. 406, 409, in which the Supreme Court sustained an indictment returned solely upon hearsay evidence and held that "an indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits."

The motions to dismiss on this ground are therefore denied.

**232**

## D.

### Motions For Bill Of Particulars

■ The defendants have also filed sundry motions for bill of particulars. A careful consideration of these motions shows that the defendants seek to have the Government produce, in advance of trial, elements of evidentiary nature. That, it has been repeatedly held, is not the function of a bill of particulars. United States v. Kushner, 2 Cir., 1953, 135 F.2d 668, certiorari denied 320 U.S. 212, 63 S.Ct. 1449, 87 L.Ed. 1850; United States v. Rosenberg, D.C., 10 F.R.D. 521; United States v. Dennis, supra; United States v. Flynn, supra.

■ Motions of this nature are, of course, addressed to the discretion of the Court. Rule 7(f) Fed.Rules Crim.Proc., 18 U.S.C.; Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; Rubio v. United States, 9 Cir., 22 F.2d 766.

■ I find that the indictment in this case fully informs the defendants of the nature of the charge against them. It is of interest to note that with the exception of defendant's contention touching upon the requirement of the knowledge of English for jurors in this District and defendants' claim of lack of jurisdiction of this Court with regard to the applicability of the Smith Act, most, if not all, of the contentions made before this Court in the many motions of the defendants have been made before other districts in similar Smith Act prosecutions under indictments closely similar to this one. That is particularly so as regards these motions for bill of particulars. Similar motions have been denied in other districts and those rulings have been sustained in higher courts. See United States v. Dennis, supra; United States v. Flynn, supra; United States v. Frankfeld, supra; United States v. Fujimoto, supra; United States v. Mesarosh, supra; United States v. Schneiderman, D.C., 106 F. Supp. 892.

These motions must also be denied.

It is therefore ordered that all defendants' Motions to Dismiss the Indictment, the Motions Attacking the Selection and Composition of the Jury list of the indicting Grand Jury, the Motions for Inspection of a Grand Jury minutes, and the Motions for Bill of Particulars be, as they hereby are, denied.