**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sherman Roy DEAN, Defendant-
Appellant.**

No. 20281.

United States Court of Appeals,
Sixth Circuit.

Nov. 30, 1970.

Merwin McCoy, Memphis, Tenn., for appellant.

William A. McTighe, Jr., Asst. U. S. Atty., Memphis, Tenn., for appellee. Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., on brief.

Before WEICK, McCREE and MILLER, Circuit Judges.

PER CURIAM.

After a preliminary hearing on July 26, 1968, at which the United States Commissioner did not find probable cause, appellant was indicted by a grand jury on September 10, 1968 in two counts, for the possession and passing of counterfeit notes in violation of 18 U.S.C. §§ 472, 473 and 2. A jury acquitted him of passing the notes, but convicted him of possession. He contends, in this direct appeal, that his conviction should be reversed and a new trial ordered because the Government's trial tactics were unfair and prejudicial. We agree.

■ Initially we consider the eliciting by government counsel of testimony that Dean, a barber, had on his person more than $5,000 of genuine currency at the time of his arrest. The record shows that the Assistant United States Attorney asked the arresting agent, Williams, whether Dean possessed any money, "good or bad", at the time of the arrest. The witness stated the amount and, upon request, repeated it. In response to objection by defense counsel, Government counsel replied,

> [C]ounsel asked the witness if there wasn't a lot of money passed in this area, and I wanted to know if this man had an unseemly amount of money in his pocket. The government's theory is that he was engaged in this type of business.

Transcript at 126. On appeal, the Government admits that the question was improper, but urges that it sought only testimony concerning the amount of counterfeit money appellant may have possessed. However, as the Court stated in Williams v. United States, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509 (1897), a case in which the Government introduced evidence that the defendant had deposited nearly $5,000 in a savings account,

> The manifest object and the necessary effect of this evidence was merely to give color to the present charges, and to cause the jury to believe that the accused had in his possession more money than a man in his condition could have obtained by honest methods. * * *

168 U.S. at 396, 18 S.Ct. at 97. The effect of the challenged testimony is similar in this case. The prejudice was compounded when, after defendant attempted to explain his possession of the currency, Government counsel chose, on cross-examination, to reemphasize the amount.

■ The Government also improperly prejudiced defendant's case by presenting testimony to the effect that Dean lived illicitly in an apartment with a single woman, although he was married and the father of three children. The Government elicited such testimony repeatedly on direct examination of its witnesses. Such conduct has no relevance to the offenses charged in the indictment, and evidence of Dean's departure from conventional moral standards was likely prejudicial to his case. It was improper for the Government to attack defendant's character as part of its case in chief, and the defendant should not have been required to undertake to attempt to explain the compromising circumstance. And we cannot be certain that his effort succeeded in curing the error. United States v. Walker, 313 F.2d 236 (6th Cir. 1963), cert. denied, 374 U.S. 807, 83 S.Ct. 1695, 10 L.Ed.2d 1031 (1963); United States v. King, 378 F.2d 359 (6th Cir. 1967), cert. denied, 396 U.S. 974, 90 S.Ct. 465, 24 L.Ed.2d 443 (1969).

A further contention is that the Government concealed from the defense the fact that electronic surveillance was used in the investigation of the case. In his Motion for Bill of Particulars, the defendant asked that the United States Attorney be required to

9. Set forth whether the Government obtained any information concerning matters set forth in the indictment by means of electronic listening devices

* * * or any form of electronic surveillance whatsoever, and, if so, to set forth the circumstances under which such electronic surveillance was conducted and the substance of the evidence thus obtained.

The court then ordered, in part, that, in reply to section 9 of the Motion, "the government furnish information concerning any electronic surveillance * * * and reports which it has involving this defendant". In its Bill of Particulars, the Government stated that "2. The United States of America will introduce no evidence obtained by any electronic device".

This answer was not responsive to the court's order, but appellant was represented by counsel who must be held to have known that it was not responsive and who might have requested a specific admission or denial whether electronic surveillance had been employed.

The record before us of what next transpired is not clear. The Government's brief states on page 13 that the Assistant United States Attorney did not know that an electronic device had been used, and so advised the Court. In the next paragraph of the brief, it is stated:

> Upon learning that such a device had been, in fact, used; that no report had been written up as to any evidence secured, and that said evidence was fragmentary and was of little probative value, a conference was had with Defense Counsel, Mr. Webb, and the information granted by the Court made known.

The brief does not cite any record reference to support this statement and defense trial counsel is dead.

At trial, defense counsel, on cross-examination of a government agent, elicited the information that electronic surveillance had been employed. It was revealed that Finch, one of defendant's alleged accomplices, had been equipped with a concealed transmitter, and that parts of a conversation between Dean and Finch had been overheard by two government agents. The Court then, over objection, permitted the Government to introduce testimony that Dean had been overheard, during that monitored conversation with Finch, saying, "We will have some new tens soon".

Whether this was error, since it was defense counsel who injected the issue, we need not decide, because we reverse on the grounds of the first two issues discussed. At a subsequent trial, the parties will commence with knowledge of the existence of the electronic record and the matter may be properly dealt with under the direction of the District Court.

We determine therefore that the erroneous admission of the evidence of currency found on appellant's person and the circumstances surrounding the apartment rental was prejudicial. In making this determination we observe that the Government's proofs of guilt are not overwhelming.

■ The Government relied primarily upon the testimony of Finch, an admitted accomplice in the alleged illegal activities, and upon the presence of appellant's fingerprints on 1 of the 107 counterfeit notes. A single fingerprint on a single note, although entitled to some weight, does not compel a finding that Dean criminally possessed the notes. The record shows that Dean was the associate of a man who has been convicted of possessing counterfeit money. Dean testified that he had played poker in a game in which the bill may have changed hands.

Reversed and remanded for a new trial.