UNITED STATES of America, Plaintiff-Appellee,

v.

Charles E. CHATHAM, Defendant-Appellant.

No. 80–7709.

United States Court of Appeals, Eleventh Circuit.

June 1, 1982.

Rehearing and Rehearing En Banc Denied Aug. 16, 1982.

Hess, Atchison & Horne, Barry Hess, Mobile, Ala., for defendant-appellant.

William A. Kimbrough, Jr., U. S. Atty., Ginny S. Granade, Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RONEY and WOOD *, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge:

Defendant Charles E. Chatham was found guilty by a jury of violation of 18 U.S.C. § 1962(c) [1] by reason of four acts of

---

* Honorable Harlington Wood, Jr., U. S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. 18 U.S.C. §§ 1962–1968, commonly known as the RICO Act, provides in pertinent part:
   Section 1961 as used in this chapter—
   (1) "[R]acketeering activity" means any act or threat involving . . . bribery . . . which

is chargeable under State law and punishable by imprisonment for more than one year;
   *   *   *   *   *   *
   (4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of

bribery charged in a one count indictment in violation of the laws of the state of Alabama.[2]

There is little dispute about the facts as the critical conversations between Chatham and the other parties involved were recorded without Chatham's knowledge, but with the consent of the others who were cooperating with the Federal Bureau of Investigation in the bribery investigation. Chatham was president of Chatham Testing and Inspection Company in Mobile, Alabama, which did testing on building projects in Alabama and Mississippi. Clay Bassett, Mayor of Citronelle, Alabama, in 1979, notified the FBI that he expected to be approached by Chatham and be offered a bribe to assure that the testing contract would be awarded to Chatham on a contemplated new public hospital to be built in Citronelle. Chatham subsequently met with the Mayor and in the course of the conversation inquired whether something could be worked out, possibly involving the purchase of options on real estate owned by the Mayor. Chatham indicated a preference for a camouflaged transaction instead of by the use of cash, because by using cash, he explained, "You can wind up in jail." No agreement was reached at that first meeting.

Another meeting followed at which the Mayor consented to a camouflaged arrangement for his supposed benefit involving two swamp land lots. However, in addition, the Mayor informed Chatham that Michael Onderdonk, city attorney and attorney for the Medical Clinic Board, wanted "part of the action," to which Chatham agreed. The next meeting was between Chatham and Onderdonk, at which Onderdonk gave Chatham a bill for non-existent legal services in exchange for $1,000 in cash.

Onderdonk, who was part of the cooperative effort with the FBI, explained at trial that the Medical Clinic Board of the city of Citronelle was a statutory board created by the city council to handle all matters of hospital construction. As attorney for the board, it was his responsibility to advise and make recommendations to the board. The city council, of which the Mayor was a voting member, however, had the final word on the hospital project.

The meetings with the Mayor and Onderdonk constitute two of the four acts of bribery charged in the indictment.

Encouraged by those positive developments in the investigation, it was decided to build a stronger case against Chatham by tempting him with another construction project. There being no actual construction projects presently being contemplated, the Mayor and the cooperating parties fabricated one in their imagination; they would build a new city hall. Chatham responded as expected and in a conversation with the Mayor offered to pay additional money for the new city hall contract, and in a separate conversation with a cooperating city council member made a similar proposition.

These last two conversations constituted the final two bribery attempts.

Laced in the recorded conversations are some admissions by Chatham that he had been unfaithful on occasion to his invalid wife. These are claimed by defendant to have been irrelevant and prejudicial.

The indictment alleged in RICO context that the defendant had committed bribery in violation of Section 13–5–30, Code of

individuals associated in fact although not a legal entity;

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

\* \* \* \* \* \*

Section 1962

\* \* \* \* \* \*

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

2. Chatham was sentenced to a term of imprisonment of twenty years and fined $25,000.

Alabama (1975).[3] The case was tried before a jury and argued on appeal in this court on the basis that Section 13–5–30 of the Code of Alabama was in effect during January 1980, the period of the alleged bribery incidents.[4] It was not.

A new Criminal Code of Alabama had been adopted in 1977 to become effective May 17, 1978, long before the four predicate acts of bribery are alleged to have occurred. The new code includes Section 13A–10–61, Bribery of Public Servants, a comprehensive bribery prohibition, which broadens the scope of prohibitions of the former section.[5]

Therefore, the issues in this case have changed since oral argument.[6] Had the indictment alleged the correct Alabama bribery section the only impediment raised by the defendant to affirming the conviction which would remain viable would be the allegedly prejudicial evidence concerning the defendant's admission of an extra

marital affair. No additional elements of bribery are added by the new statute for the government to prove. The defendant has not suggested any additional specific defense which could be offered under the new statute. The critical issue now is whether alleging the superseded Alabama bribery section was a fatal mistake.

The defendant claims that it was fatal, as otherwise it would violate his rights under the Fifth and Sixth Amendments to the Constitution. It is his position that no pattern of racketeering has been or could be proved based on the repealed statute. As a result of the mistake, the defendant argues that he was neither charged with a crime, but in any event was not correctly informed what the charge was. The defendant admits that certain of his original defenses are no longer available under the new, broader statute. That is true, but the more

---

**3.** Section 13–5–30 provided:

Any person who corruptly offers, promises or gives to any executive, legislative or judicial officer or municipal officer or to any deputy clerk, agent or servant of such executive, legislative, judicial or municipal officer, after his election appointment, employment, either before or after he has been qualified, any gift, gratuity or thing of value, with intent to influence his act, vote, opinion, decision or judgment on any cause, matter or proceeding, which may be then pending or which may be by law brought before him in his official capacity, shall on conviction be imprisoned in the penitentiary for not less than two years nor more than ten years.

**4.** After oral argument and during consideration of this case, this court determined that it appeared that the 1975 Alabama Code had been superseded, and the parties were directed to file supplemental briefs. All parties now concede that Section 13–5–30, the section alleged in the indictment, was not in effect in January 1980.

**5.** Section 13A–10–61 of the new code provides:
(a) A person commits the crime of bribery if:
(1) He offers, confers or agrees to confer any thing of value upon a public servant with the intent that the public servant's vote, opinion, judgment, exercise of discretion or other action in his official capacity will thereby be corruptly influenced; or
(2) While a public servant, he solicits, accepts or agrees to accept any pecuniary benefit upon an agreement or understanding that his vote, opinion, judgment, exercise of dis-

cretion or other action as a public servant will thereby be corruptly influenced.
(b) It is not a defense to a prosecution under this section that the person sought to be influenced was not qualified to act in the desired way, whether because he had not yet assumed office, lacked jurisdiction or for any other reason.
(c) Bribery is a Class C felony.
(As amended, effective Jan. 1, 1980).
A Class C felony provides for a penalty of not more than 10 years or less than 1 year and 1 day. Id. § 13A–5–6(a)(3).

**6.** As originally briefed and argued, defendant claimed that there could be no state bribery offense in relation to a non-existent city hall, Barefield v. State, 14 Ala. 603 (1848), and that the allegations regarding the hospital project were defective for other reasons. It was argued that both hospital bribery incidents constituted no more than one overall incident, thereby failing to establish a "pattern of racketeering activity." It was also argued that there could be no bribery of the city attorney because he was not an actual member of the Medical Clinic Board. Therefore, nothing official could be brought before him and he had no power to act. It was also argued that the evidence about the defendant's extra marital activities was irrelevant and prejudicial. It is conceded that under the new code it would not be a defense that the city hall project was fictional, and that bribery of the city attorney would now qualify even though he was not a voting member of the Medical Clinic Board.

important observation is that the new bribery statute offers the defendant no new or additional defenses which he is entitled to pursue before the jury. Were it the other way around so that instead of losing a possible defense, the new statute provided defendant with an additional defense not raised at trial, the conviction would have to be set aside. Likewise, if the new statute required the government to prove some new or additional element to constitute the offense of bribery not required by the repealed statute, the conviction would also have to be set aside. The defendant also refers briefly to a comparison of the language of the two statutes relating to intent, and implies there is some distinction. The former statute employed the language, "Any person who corruptly offers" a bribe "with intent to influence" the public employee. The new statute adopts language to give a thing of value "with intent" that the public employee be "thereby corruptly influenced." No new element of intent was added. The same intent requirement was merely expressed with different words. The defendant further argues that had he been acquitted under the indictment alleging the superseded statute, he could have been reindicted under the new statute without the benefit of a double jeopardy defense. For the purposes of RICO, the elements of the old bribery statute having been included within the new bribery statute and the facts being the same in both instances, double jeopardy would have barred any attempted second prosecution. As a fall back position the defendant argues that at least his defenses under the old act should be recognized under the new act. That novel argument is not supported by any authority and must be rejected.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides in part that the indictment shall cite the statute which the defendant is alleged to have violated, but adds in Rule 7(c)(3) that error in the citation shall not result in reversal of a conviction if the error did not mislead the defendant to his prejudice. The Notes of Advisory Committee on Rules comments that a conviction may be sustained on the basis of a statute other than the one cited in the indictment. *Williams v. United States*, 168 U.S. 382, 389, 18 S.Ct. 92, 94, 42 L.Ed. 509 (1897).

■ If the citation error did not mislead or otherwise prejudice the defendant reversal of a conviction is not warranted. It was held in *Theriault v. United States*, 434 F.2d 212, 213 n.2 (5th Cir. 1970), *cert. denied*, 404 U.S. 869, 92 S.Ct. 124, 30 L.Ed.2d 113 (1971), that the citation in the indictment to a non-existent statute due to a typographical error was not material if it did not mislead the defendant. We see no substantial distinction between a non-existent statute due to a typographical error, and citation to a statute that is non-existent because it has been superseded by a new statute embracing the acts of the defendant. The rule, following *Williams, supra*, is plainly stated in *United States v. Hutcheson*, 312 U.S. 219, 229, 61 S.Ct. 463, 464, 85 L.Ed. 788 (1941).

In order to determine whether an indictment charges an offense against the United States, designation by the pleader of the statute under which he purported to lay the charge is immaterial. He may have conceived the charge under one statute which would not sustain the indictment but it may nevertheless come within the terms of another statute.[7]

Even though the defendant's only defenses were eliminated by the new statute, that does not constitute the type of prejudice requiring reversal. The government's proof sustained its burden under the new statute. The defendant has failed to identify any missing element in the government's case required under the new statute, or to identify any possible defenses which would have been available except for the miscitation.

---

**7.** In addition, the additional part of the rule, although not applicable here, provides relief to defendants in some instances.

On the other hand, an indictment may validly satisfy the statute under which the pleader proceeded, but other statutes not referred to by him may draw the sting of criminality from the allegations

312 U.S. at 229, 61 S.Ct. at 464.

If the situation were reversed, however, and it was the broader statute that had been replaced by the narrower statute, then prejudice would be apparent and the conviction would have to be reversed.

The government also points out that the miscitation occurred, not in a state prosecution for bribery, but as an element of a RICO prosecution in which the elements of the state offense are incorporated only for "definitional purposes." The cases recognize a distinction and permit some flexibility. In *United States v. Salinas*, 564 F.2d 688, 693 (5th Cir. 1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 800 (1978), the court in a RICO case determined that the "business of gambling" allegation of the indictment was applicable even though the state statute outlawed only "gambling," not the "business of gambling." As numerous analogous cases are well reviewed in that opinion, we will not repeat that analysis in detail here.[8] It concludes that state law offenses serve only a "definitional purpose," nothing more. A RICO conviction has been upheld, for instance, even where the defendant had been previously acquitted of the state offense, *United States v. Frumento, supra* note 8. In the circumstances of the present case the miscitation of the superseded statute adequately identified and defined bribery under the new statute.

■ Defendant also objects to the admission into evidence of some recorded admissions by the defendant about his extra marital activity. Those personal admissions served no legitimate purpose in the trial, but they were not exploited. As those admissions were lost in the other conversations and bribery negotiations, it was harmless error beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The judgment of the district court is AFFIRMED.

**8.** Considered by that court, among others, were *United States v. Nardello*, 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969); *United States v. Revel*, 493 F.2d 1 (5th Cir. 1974), *cert. denied*, 421 U.S. 909, 95 S.Ct. 1559, 43 L.Ed.2d 774 (1975); *United States v. Crockett*, 506 F.2d 759 (5th Cir.), *cert. denied*, 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975); and *United States v. Frumento*, 563 F.2d 1083 (3d Cir. 1977), *cert. denied*, 434 U.S. 1072, 98 S.Ct. 1258, 55 L.Ed.2d 776 (1978).