**UNITED STATES of America**

v.

**Saul BASEN.**

**Crim. No. 22842.**

United States District Court
E. D. Pennsylvania.

Jan. 22, 1970.

Louis C. Bechtle, U. S. Atty., by Hal F. Doig, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

John Patrick Walsh, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

JOHN W. LORD, Jr., Chief Judge.

Before the Court in the above-captioned case is defendant's motion for new trial. Defendant was indicted in March, 1967 for transferring and concealing and aiding and abetting in transferring and concealing property and assets of Karasow Jewelers in violation of 18 U.S. C.A. §§ 152 and 2. On September 29, 1969, the defendant was brought to trial before the Honorable John W. Lord, Jr., Chief Judge, and a jury. After presentation of the evidence, the jury, on October 9, 1969, returned a verdict of guilty.

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, counsel for defense filed a timely motion for new trial in which he raised two grounds in support of his motion: (1) that the trial judge erred in refusing to grant a mistrial after a series of statements by one of the Government's witnesses which counsel argues necessarily raised an inference that the defendant was involved in another fraudulent bankruptcy and (2) that the defendant was surprised and prejudiced by the fact that the Government's proof varied from its answer to the Supplemental Bill of Particulars which had been submitted to the Government by defense counsel.

 It should be noted at the very outset that the granting of a motion for new trial is a matter within the sound discretion of the trial court. Dranow v. United States, 307 F.2d 545 (8th Cir. 1962); United States v. Lubertazzi, 283 F.2d 152 (3rd Cir. 1960); Petro v. United States, 210 F.2d 49 (6th Cir.), cert. denied, 347 U.S. 978, 74 S.Ct. 790, 98 L.Ed. 1116 (1954). And furthermore, the convicted defendant has the burden of showing that the errors at trial, if any, were prejudicial to him. United States v. Redfield, 197 F.Supp. 559 (D.Nev.), aff'd 295 F.2d 249 (9th Cir. 1961), cert. denied, 369 U.S. 803, 82 S.Ct. 642, 7 L.Ed.2d 550 (1962); United States v. Segelman, 86 F.Supp. 114 (W.D.Pa.1949).

Defendant's first contention is based on certain testimony of a Government witness, Sylvan Scolnick, who, in relevant part, testified as follows:

Q. All right. Have you been involved in more than one fraudulent bankruptcy?

A. Yes, sir.

Q. Would you tell us some of them that you were involved in just by name?

A. M. Stein & Company, Levack Sales, H. Karasow Jewelers, Interstate Appliance—just many. (N.T. p. 587)

The witness later testified:

Q. When did this business [Karasow Jewelers] go into operation?

A. The late summer of '62.

Q. You had no warehouse then before 1963 or—

A. Oh, yes. We had a warehouse at 1215 Hancock Street.

Q. Did you see buyers there?

A. Some. It was a garage type of building. It had a dirt floor. It was extremely cold there.

And this was prior to Mr. Karasow's renting the warehouse that he had further down on Frankford Avenue. The goods were stored at 1215 Hancock Street warehouse and—

Q. When was this warehouse rented?

A. This warehouse was rented, either during or after or directly after the Interstate Appliance bankruptcy.

Q. We don't know anything about that. Do you remember the year?

A. 1961.

Q. By whom?

A. By Mr. Basen.

Q. All right. That had no connection—

MR. WALSH: What? What was that?

THE WITNESS: What was what?

MR. WALSH: I move for a mistrial. He did that deliberately.

THE COURT: Side-bar conference. (N.T. pp. 599–600).

First, the above-quoted series of questions and answers should be placed in context. The witness was being questioned by the counsel for the United States about the origins of the Karasow bankruptcy. After eliciting testimony about the initial meetings where the

fraudulent bankruptcy was organized and planned, counsel then continued by questioning the witness about the renting of various warehouses which were used in the operation of this scheme. The witness first testified that they had rented a warehouse on Foulkrod Street. After eliciting the fact that the warehouse was rented by Herbert Karasow, counsel then asked whether or not any other warehouses had been rented in connection with the Karasow bankruptcy. The witness testified that Mr. Karasow, at the direction of himself and the defendant, also rented a warehouse on Frankford Avenue. Counsel then asked when the warehouse was rented. The witness responded "in the latter portion of '62 or early '63." While counsel was making the statement "you had no warehouse then before 1963 or ——," he was interrupted by the witness who stated that "we had a warehouse at 1215 Hancock Street." At this point counsel inquired about the use of this warehouse on Hancock Street and it was stated that buyers went there before they rented the warehouse on Frankford Avenue. Then, as was done with respect to the Frankford Avenue warehouse, counsel attempted to elicit when the warehouse was rented. The witness responded by stating that "[t]his warehouse was rented, either during or after or directly after the Interstate Appliance bankruptcy." Since neither the Court nor the jury knew when this bankruptcy took place, counsel asked the witness for the year. The witness answered 1961. Again, following the same progression as he did with the Frankford Avenue and Foulkrod Street warehouses, counsel asked who rented the Hancock Street warehouse. The witness responded Mr. Basen. After this last remark counsel for defense moved for the mistrial.

■ In a criminal prosecution there is no question but that evidence of prior crimes is inadmissible for the purpose of showing the defendant committed the particular crime on which he is presently being tried. The rationale is straightforward; the fact that a defendant has

committed one crime is not proof that he has committed the crime for which he is now on trial. However, in the instant case, this Court is not convinced that the above-quoted colloquy implicated, or even tended to implicate, the defendant in a prior fraudulent bankruptcy. Defense counsel argued at side-bar and in his brief that this testimony "inescapably" led to and made "crystal clear" the fact that defendant was involved in the fraudulent Interstate Appliance bankruptcy. The Court does not find this to be the case; but rather finds that the statement was made merely as a reference to time. Initially this witness dated the renting of the warehouse in relation to an event, the Interstate Appliance bankruptcy, rather than the year, 1961. What is clearly demonstrated by these statements is that the defendant rented the warehouse on Hancock Street in 1961 which was in fact prior to the formation of the Karasow bankruptcy scheme. This is a far cry from an inference, which it is argued is the necessary inference, that since the warehouse was rented prior to the Karasow bankruptcy and around the time that the witness was involved in another fraudulent bankruptcy scheme that the defendant was also "tied-up" with that prior bankruptcy. We find no such inference could logically be drawn. This is particularly true in light of the testimony which was given prior to the disclosure that the defendant rented the warehouse, testimony which directly connected the use of the Hancock Street warehouse not with the Interstate Appliance fraud but rather with the Karasow bankruptcy, the bankruptcy fraud for which the defendant was presently being tried. It should be noted that there is no corresponding statement that the Hancock Street warehouse was ever used in the Interstate bankruptcy.

This Court's position is substantiated by the language used by the witness. The witness stated that the warehouse was rented "during or after or directly after the Interstate Appliance bankruptcy." It could have been rented during

any one of these three time periods. Since it would indeed make little sense to rent a warehouse for use in a bankruptcy scheme either "after or directly after" the scheme was over—which is the plain meaning of two of the three time periods which the witness testified to—clearly this reference to the Interstate Appliance fraud was one of time. It was not some veiled allusion to the fact that the warehouse, and therefore the defendant who rented it, was also connected with that prior bankruptcy.

Furthermore, after the Court informed counsel of its decision not to grant the requested mistrial, it volunteered to caution the jury that no inference should be drawn from the last statements of the witness that the defendant was in any way connected with any previous fraudulent bankruptcies; and that in a criminal trial it was immaterial and incompetent to consider anything of that nature in determining the defendant's innocence or guilt in the pending case. Counsel for defense refused the proffered instruction and stated on the record that "I am willing to stand on my objection." (N.T. p. 602). This, of course, precluded the Court from making explicit what it had already expressed to counsel as the reason for its ruling, namely that the plain meaning of the statements was that the defendant rented the warehouse around the time that the witness was involved in another fraudulent scheme but that there was absolutely nothing from which they should infer that this defendant had anything to do with that scheme.

The verdict of guilty was reached by a jury after nine days of testimony during which time they were presented with a plethora of evidence, including the inculpating testimony of five accomplices, from which they could well conclude that the defendant had been a willing partner in this fraudulent scheme. For the above stated reasons this Court does not feel that the interests of justice would be served by granting the defendant a new trial on the ba-

sis of the quoted colloquy. *See* Evenson v. United States, 316 F.2d 94, 96 (8th Cir. 1963).

Defendant's second ground in support of his motion for new trial is readily disposed of. Defendant claims to have been surprised and prejudiced by a variance between the information supplied in the Supplemental Bill of Particulars and the Government's proof at trial. More specifically counsel argues that since the testimony of Herbert Karasow, as it related to the delivery of certain fixtures to the store by the defendant, varied from this information in the Supplemental Bill of Particulars, it should have been stricken from the record by the trial judge, as requested by defense counsel.

The answer to the original Bill of Particulars stated that the defendant did not transfer or conceal any property himself, but rather that he furnished fixtures and cash to outfit the store, knowing that it was part of a fraudulent scheme. The defendant submitted a Supplemental Bill of Particulars in which he asked for, among other things, the particular fixtures which the Government alleges were supplied by the defendant, the dates they were supplied, where they were delivered, by whom, and who received them. The Government answered these questions by stating that the fixtures involved were five showcases, a quantity of rug, and a fire extinguisher and that the defendant, Jack Secouler and Jack Frank delivered these fixtures to Sylvan Scolnick and Herbert Karasow in or about the month of July, 1969 at the Karasow store. The proof at trial was that the defendant, with two helpers (Karasow's testimony at p. 134) or the defendant with Jack Secouler and two helpers (Secouler's testimony at p. 362) delivered the fixtures. At the trial (N.T. p. 134) and in his brief in opposition to the motion for new trial (p. 6), counsel for the Government admits there are some inconsistencies but asserts that the variance is immaterial and in no way prejudiced the defendant. On the other hand, the defendant claims he was surprised

and prejudiced because there is no mention in the Supplemental Bill of Particulars of two workers aiding the defendant in delivering these fixtures. Counsel argues that had he known this information he might have been able to locate the "helpers" and that they might have been able to rebut the testimony of Herbert Karasow and/or Jack Secouler.

 Rule 7(f) of the Federal Rules of Criminal Procedure authorizes the defendant to seek a Bill of Particulars in order to obtain the details of the charge against him. It is clear that the function of the Bill is to enable counsel to adequately prepare for trial. United States v. Glaze, 313 F.2d 757 (2nd Cir. 1963). It is also clear that, as a general rule, a variance between the pleading and the proof may serve as a basis for a new trial. However, it is not every variance which results or should result in a new trial. In order for the variance to warrant a new trial the substantial rights of the defendant must have been affected. United States v. Haskins, 345 F.2d 111 (6th Cir. 1965); United States v. Glaze, *supra*. In this vein it should be noted that Rule 52(a) of the Federal Rules of Criminal Procedure specifically states "Any error, defect, irregularity or *variance* which does not affect substantial rights shall be disregarded." (emphasis added). This Court finds that while there was a variance in the instant case it was insignificant and no prejudice resulted from it and therefore that the variance was harmless within the meaning of Rule 52(a).

Testimony at the trial related that the two workers in question were merely casual laborers who had been picked up off the street for a day's pay. Neither Karasow nor Secouler ever knew their names or addresses nor could they even remember with certainty their races. It would have been virtually impossible for counsel to locate them almost seven years after the event. Moreover, the Government did not put these men on the stand and the testimony of their hire in no way added to the weight of the Government's evidence. It is clear that

the variance was in no way prejudicial to the rights of the defendant.

### ORDER

And now, to wit, this 22nd day of January, A. D. 1970, it is ordered that defendant's motion for new trial be and the same is hereby denied.

And it is so ordered.