UNITED STATES of America

v.

Martin H. NEFF.

Crim. No. 70–420.

United States District Court,
E. D. Pennsylvania.

May 22, 1972.

Louis C. Bechtle, U. S. Atty., by Barry W. Kerchner, Asst. U. S. Atty., for Government.

Cadmus, Patten & Good, by Fred T. Cadmus, III, West Chester, Pa., for defendant.

## OPINION AND ORDER

HANNUM, District Judge.

Presently before the Court is the defendant's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C. The defendant's motion for judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, 18 U.S.C., has been abandoned.[1]

The defendant, Dr. Martin H. Neff, is a seventy year old licensed physician who has maintained a general practice in the Borough of Downingtown, Pennsylvania since 1929. On May 12, 1971 a jury found Dr. Neff guilty on five counts of selling and delivering various quantities of stimulant[2] and depressant[3] drugs in violation of § 301(q) (2) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 331(q) (2) (Supp V, 1970), amending 21 U.S.C. § 331 (1964), (repealed, Comprehensive Drug Abuse Prevention and Control Act of 1970, P.L. 91–513, Title II, § 701(a), 84 Stat. 1281). In each of the five transactions set forth in the indictment the defendant was dealing with special agents of the Federal Bureau of Narcotics and Dangerous Drugs. The Government in its case in chief, in addition to proving the facts surrounding each of the several transactions, offered expert medical testimony to the effect that in each transaction a physician-patient re-

1. Defendant's Brief Sur Motion for New Trial, 1.

2. Amphetamine tablets composed of approximately 15 milligrams of dextroamphetamine sulfate and approximately 24 milligrams of amobarbital.

3. Seconal capsules containing approximately one and one-half grains of secobarbital sodium.

lationship was lacking between the parties and that the doctor was not acting in the ordinary and authorized course of his profession as required by § 511(a) of the Act, 21 U.S.C. § 360a(b) (Supp. V, 1970), amending 21 U.S.C. § 360 (1964), (repealed, Act of Oct. 27, 1970, P.L. 91–513, Title II, § 701(a), 84 Stat. 1281). By way of defense the doctor took the stand and attempted to show both that his acts were within the ordinary and authorized course of his profession and, further, that he had been entrapped. In addition he offered seventeen character witnesses all of whom testified to the effect that his reputation for being an honest, truthful, and law-abiding citizen was very good, if not excellent. To rebut the defense offered, the Government produced three witnesses. The first, the principal of a high school located some ten to twelve miles from the doctor's place of residence and practice, testified that, among several of his students, the doctor had a bad reputation for being a law-abiding citizen. The second, a former student from the same high school, was offered to prove the defendant's predisposition to commit the offenses charged. He testified to having made repeated purchases of both stimulants and depressants, as often as once a week or more, for three months prior to the Government's investigation and in a manner substantially similar to that by which they were ultimately obtained by the Government agents. He also testified that he had, at times, been accompanied by other students who had been similarly accommodated. The third witness, another former student, testified that once a week or more she would drive with others to a parking area behind the doctor's office. There, she would wait briefly while her companions would obtain uncommonly large prescriptions of amphetamines. She, too, testified that the defendant had a bad reputation for being a law-abiding citizen among those seven or eight students whom she had heard discussing him.

The defendant's motion for a new trial is comprised of eleven assignments of error. Three have been withdrawn. Before dealing with the remainder, it would seem appropriate to set forth the standards by which a motion for a new trial is judged.

Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C., permits a District Court to grant a motion for a new trial "if required in the interest of justice". The Court may grant a new trial only upon motion of a defendant. United States v. Green, 134 U.S. App.D.C. 278, 414 F.2d 1174, 1175 (1969); United States v. Vanterpool, 377 F.2d 32, 34–36 (2d Cir. 1967). The motion itself is addressed to the Court's sound discretion. Dranow v. United States, 307 F.2d 545, 566–567 (8th Cir. 1962); United States v. Basen, 308 F. Supp. 65, 66 (E.D.Pa.1970). It has been held that motions for new trials are not favored and should be granted only with great caution, United States v. Redfield, 197 F.Supp. 559, 562 (D.Nev.1961), aff'd., 295 F.2d 249 (9th Cir. 1961), cert. denied 369 U.S. 803, 82 S.Ct. 642, 7 L.Ed.2d 550. Such disfavor, however, is generally confined to motions for a new trial based on newly discovered evidence where lapse of time hampers the ability of the Government to re-try its case. United States v. Smith, 179 F.Supp. 684 (D.D.C.1959). When the grounds of the motion are that the verdict is contrary to the weight of the evidence or not supported by substantial evidence, the Court should be governed by the "interest of justice" alone. See, United States v. Parelius, 83 F.Supp. 617, 622 (D.Hawaii 1949). Where it is claimed, however, that "error" was committed in the course of the trial, a more definitive set of standards apply. A convicted defendant has the burden of showing first, that error was committed and, second, that such error was prejudicial to him. United States v. Basen, *supra*, 308 F. Supp. at 66; United States v. Redfield, supra, 197 F.Supp. at 562. Even if demonstrated to exist, an error which "does not effect substantial rights" is considered "harmless" and shall be disregarded. Federal Rules of Criminal

Procedure, Rule 52(a), 18 U.S.C. To determine whether or not a given error is harmless, two slightly different tests have evolved. Where the error is of federal constitutional dimension the test is whether it was "harmless beyond a reasonable doubt". Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Where, however, the error is not of constitutional magnitude, the test is whether the Court can conclude "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error". Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); United States v. Panczko, 429 F.2d 683, 686–687 (7th Cir. 1970). It has been held that the decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error. Gaither v. United States, 134 U.S.App.D.C. 154, 413 F.2d 1061, 1079 (1969) (citing cases).

It is not contended in the present case that the verdict was against the weight of the evidence nor that any of the alleged errors are of constitutional proportion. Accordingly, those errors that are claimed shall be judged by the *Kotteakos* standard.

■ The defendant first objects to hearsay testimony elicited on cross-examination of Special Agent George Miller, the Government's first witness. The agent testified that the language he used when first inquiring of the defendant whether he had something to keep the agent awake was what he was told by the Government's informer that the latter had used when he had made purchases from the doctor "on previous occasions". This testimony, though hearsay, only suggested what properly became a part of the record when the Government not only produced the informer himself but also offered the uncontradicted testimony of its second rebuttal witness to the effect that the defendant had sold and delivered stimulant and depressant drugs to others on occasions previous to his dealings with the Government agents. When offered from a competent source, such testimony is highly relevant to the entrapment issue of whether the defendant was predisposed to commit the crimes charged and was therefore properly admissible. Whiting v. United States, 296 F.2d 512, 516 (1st Cir. 1961). Under the circumstances any error in the initial receipt of this evidence was cured by its proper admission later. Samuels v. United States, 397 F.2d 31 (10th Cir. 1968). It was therefore unquestionably harmless within the *Kotteakos* standard.

In a similar attempt to eliminate any possible suggestion that he was predisposed to dispense drugs indiscriminately, the defendant has also urged the impropriety of allowing the Government's first and third rebuttal witnesses to testify to his bad reputation for being a law-abiding citizen. His principal argument is that the Government failed to establish the competency of its witnesses.

Each of the Government's three rebuttal witnesses were associated with the Unionville High School prior to the defendant's arrest in the Spring of 1969. The first, Garland Hoover, was the school's principal at the time, while the second and third, Charles Folks and Marcia Rice, were both students in their senior years. In the course of the prosecution's direct examination of Mr. Hoover, it was established that the high school was approximately ten to twelve miles distant from Downingtown and that he had heard "quite a few" of his students "discussing" Dr. Martin Neff. During an intervening side bar conference and short recess the prosecutor satisfied the Court that he was entitled to introduce rebuttal evidence of the defendant's bad reputation for truthfulness and for being a law-abiding citizen in the neighborhood where he lived and was known. See Michelson v. United States, 335 U.S. 469, 479, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948); 1 Wigmore, Evidence § 58 (3d Ed.1940). Thereaf-

ter, the prosecutor asked the witness, "Do you know his general reputation for being a law-abiding citizen among those people in his neighborhood with whom you have discussed Dr. Neff?" Over a general objection, the witness was permitted to answer, "It was not good". At a side bar conference moments later, counsel for the defendant stated that his objection was based on the fact that the Government had failed to demonstrate that those persons who "discussed" Dr. Neff actually knew him. The same reason was assigned in the defendant's motion for a new trial. In his supporting brief, however, counsel added the additional objections that the Government failed to show (1) that the witness himself actually knew Dr. Neff and (2) that any of the students among whom the reputation was held lived in or near Downingtown.

The same problem arose when the prosecutor attempted to elicit similar bad reputation testimony from Marcia Rice. Early in the course of direct examination it was established that the witness did not know the defendant personally. Thereafter, the prosecutor asked, "Did you know anything of him from your conversation with other persons?" Upon interjection of a general objection from the defendant, the Court directed the prosecutor to first establish the competence of the witness before proceeding further. In response to the prosecutor's ensuing questions it was established that during the interval between August 1968 to February of 1969 the witness knew seven or eight other people with whom she "discussed" Dr. Neff. She was then asked, "Mrs. Rice, can you tell us whether the reputation of Dr. Neff, as you have garnered it from conversations with other persons, would be good or bad?" Defense counsel specifically objected to the question on the ground that the Government, as before, failed to show whether the persons with whom she discussed Dr. Neff's reputation actually knew him. On that basis, the objection was overruled and the witness answered, "Well, it wasn't very

good". In his motion for a new trial defense counsel repeated his specific objection and added that the witness was not "otherwise qualified under the Reputation Witness Rule". In his supporting brief, for the first time, he raises the additional objections that (1) the witness did not know the defendant; (2) there was no proof that any of those with whom she discussed the defendant lived in his neighborhood; and (3) that the question answered was not properly limited to the defendant's reputation for being a law-abiding citizen.

■ Initially, the Court would observe that the defendant's mere general objection to the bulk of the reputation testimony presently claimed to have been erroneously admitted is ground enough to preclude its further consideration. It is a fundamental principle that a *general* objection, if overruled, cannot avail the objector on appeal. Similarly, a *specific* objection, if overruled, will be effective only to the extent of the grounds specified, and no further. United States v. Indiviglio, 352 F.2d 276, 279 (2d Cir. 1965); United States v. Cook, 432 F.2d 1093, 1103 (7th Cir. 1970); 1 Wigmore, Evidence § 18 (3d Ed.1940). The reason for requiring that specific objection be made is to give the Court an opportunity to prevent errors before they occur or to correct any that are made, if possible, before the case is submitted to the finder of fact. See, United States v. Indiviglio, *supra*, 352 F.2d at 280. However, due to the kinship of the objection that was properly preserved and the remainder that were later raised, all that were mentioned shall be discussed.

It is to be noted that the use of reputation evidence constitutes a well recognized exception to the hearsay rule. When used to supply the basis of an inference as to the truth of a fact asserted by a number of other persons, the evidence is testimonial in nature. 5 Wigmore, Evidence § 1609 (3d Ed.1940). In light of the well settled principle that prohibits proof of particular acts as evidence of an individual's character, its admission is justified on the basis of ne-

cessity and upon the presumption that it carries with it a circumstantial guarantee of trustworthiness. Because such evidence is testimonial, both the testifying witness and the source of the testimony are subject to the principles regulating testimonial qualifications. *Id.* §§ 1610, 1424.

     The competence of the witness himself is determined by a number of different rules. It is fundamental that the witness must have personal knowledge of that to which he testifies. 3 Wigmore, Evidence § 691 (3d Ed. 1970). The general rule requires the witness and the defendant to know one another personally. Michelson v. United States, 355 U.S. 469, 478, 69 S.Ct. 213, 219, 93 L.Ed. 168 (1948). Although it is undoubtedly preferable for the witness to be personally acquainted with the defendant, it has been held that the witness need only know who he is. Commonwealth v. Principatti, 260 Pa. 587, 597, 104 A. 53, 57 (1918).[4] Such flexibility in the rule is reasonable for the witness is specifically prohibited from offering an opinion based upon personal familiarity with the defendant alone. See, Deschenes v. United States, 224 F.2d 688, 691 (10th Cir. 1965); United States v. Kaufman, 429 F.2d 240, 247 (2d Cir. 1970). The value of his testimony lies not in what he knows of the defendant's personal habits, character, family, or business integrity, but what he has heard about his reputation. Shimon v. United States, 122 U.S.App. D.C. 152, 352 F.2d 449, 453 (1965). Application of this rule to the present case supports the defendant's delayed objections to the competence of both Mr. Hoover and Mrs. Rice.

    A considerably more rigid rule qualifies the source of the testimony to be offered. To prevent the compounding of hearsay and thereby to ensure that the evidence to be offered has a circumstantial guarantee of trustworthiness, it is required that the sources from which the reputation evidence is derived be themselves adequate. Therefore, the reputation testified to must have its origin in the experience of those who have had direct contact with the party bearing the reputation. Their personal observation is indispensible to its foundation. See Whiting v. United States, 296 F.2d 512, 517 (1st Cir. 1961); 5 Wigmore, Evidence §§ 1610, 1615 (3d Ed. 1940). By this rule, the defendant's belated objection to the competence of Mr. Hoover's testimony and his specific objection to Mrs. Rice's testimony would have firm support.

    Closely related to the foregoing principles are two parallel rules. The first relates to the competence of the testifying witness and requires that he reside in the same community as the individual bearing the reputation. Minkow v. United States, 5 F.2d 319, 320 (4th Cir. 1925). Its purpose is to ensure that the witness has personal knowledge of that to which he testifies and to prevent partisan inquiry and report. 3 Wigmore, Evidence § 692 (Chadbourn rev. 1970). The second relates to the competence of the testimony to be offered. Such testimony may only encompass the defendant's general reputation in the community *in which he resides.* Williams v. United States, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509 (1897). Although the rule would appear to be a once useful adjunct of the rule requiring that the reputation reported have its origin among those who know the defendant, the rigidity of its application has been criticized. 5 Wigmore, Evidence §§ 1615–1616 (3d Ed.1940). It has, for example, been invoked to exclude proof of an individual's reputation for integrity "among a limited group such as fellow employees in a particular building". Williams v. United States, *supra* at 397, 18 S.Ct. at 97; Michelson v. United States, 335 U.S. 469, 481, 69 S.Ct. 213, 221, 93 L.Ed. 168

---

4. "It is not necessary to know one personally in order to have sufficient acquaintance with his reputation to give testimony concerning it; and this is so whenever one's character or reputation is properly at issue."

(1948); United States v. Battaglia, 394 F.2d 304, 316 (7th Cir. 1968).

Since the boundaries of this latter principle are essentially geographical, any purpose it once served would seem better preserved by the rule excluding testimony of rumor (as distinguished from reputation). By this principle proof of general character traits is favored over reaction to particular acts or occurrences, and the consensus of many is favored over the comments of a few. See Moore v. United States, 123 F.2d 207 (5th Cir. 1941). Although each of these latter rules should be as flexible as reason will permit, the application of either in the present case would support the defendant's remaining objections to the testimony of both Mr. Hoover and Mrs. Rice.

■ Recognizing, however, the flaws in the Government's rebuttal evidence, the question still remains as to whether the defendant was prejudiced by its admission. It is apparent that the evidence of the defendant's bad reputation for being a law-abiding citizen originated within the student body as a consequence of the defendant's dealings with several of its members. The Government attempted to introduce evidence of such contact through the use of unqualified witnesses. However, because the Government did introduce competent evidence of the defendant's dealings with students through the testimony of Charles Folks, any error in the admission of the Hoover and Rice testimony was adequately cured. Samuels v. United States, 397 F.2d 31 (10th Cir. 1968). It was therefore harmless within the *Kotteakos* standard.

■ The defendant next complains of a conversation between the Court and Juror No. 1 in the presence of the court stenographer, but in the absence of counsel. During the morning session of the third day of trial, in addition to testifying himself, the defendant offered the testimony of the first seven of his seventeen character witnesses. As the afternoon session was about to commence Juror No. 1, Charles Mast, indicated that he had a question to ask the Court. To determine the nature of the inquiry, the Court temporarily recessed the trial and accompanied both Mr. Mast and the court stenographer into the adjacent corridor. There, Juror No. 1 related that he, as business manager of the Lukens Steel Company Band, had had minor business dealings with the defendant's second character witness, Creston Shoemaker, the Mayor of Downingtown. The business dealings included contracts for summer concerts that had been played in Downingtown. Having felt that it was his duty to report his limited acquaintance with the witness, Juror No. 1 stated that he would endeavor not to let it affect his thinking. The Court terminated the dialogue by assuring Mr. Mast that it had the utmost confidence in his ability to be fair and impartial and to abide by the Court's charge. Upon returning to the courtroom immediately thereafter, defense counsel specifically objected to the conversation being conducted in his and the prosecutor's absence.

It is inconceivable how the defendant could argue that a possibility of prejudice arose from the foregoing events. Absent a plain showing of such prejudice, or its reasonable possibility, such an inquiry and answer will not support a motion for a new trial. United States v. Woodner, 317 F.2d 649, 652 (2d Cir. 1963); Bacino v. United States, 316 F.2d 11, 14 (10th Cir. 1963).

The defendant also complains that the Court should grant a new trial on the basis of an alleged unauthorized communication between a juror or jurors and the deputy marshal sworn to hold them in his custody during their deliberations. From what has been presented to the Court, the facts are as follows: The case was submitted to the jury on Wednesday, May 12, 1971, at 10:30 a. m. The verdict was returned at 2:09 p. m. the same afternoon. Barring time for lunch, the jury's deliberations did not exceed two and one-half hours. On May 19, 1971, seven days later, the present

motion for a new trial was filed. Averment eleven set forth the present complaint.[5]

Hearing nothing further from the defendant by June 2, the Court entered an Order requiring the defendant to "file affidavits setting forth with particularity and specificity the bases for the averment No. 11 of the reasons in support of Defendant's Motion for New Trial." On June 17, 1971 defense counsel filed the following affidavit setting forth the basis for the averment:

"On Sunday, May 16, 1971, the affiant, Fred T. Cadmus, III [defense counsel], was informed that the foreman of the Neff jury, Charles Mast, had stated following the trial that after retiring to deliberate and before returning its verdict, one or more of the jurors discussed with the tipstaff, who was sworn to keep them in his charge, their proposed verdict, particularly the right to make a recommendation of leniency, although whether anything else was discussed is unknown; that the said court official advised the jury or juror that the verdict must be only 'guilty' or 'not guilty'. No other information concerning the matter is known to the affiant."

Thereafter the record remains silent until March 30, 1972 when the notes of testimony were transcribed. On that date the Court entered an Order establishing a deadline for briefs and setting April 21, 1972 at 10:00 a. m. as a hearing date for the present motion. On April 21 defense counsel did not appear due to a conflicting schedule and agreed along with the Government to submit the present motion on the briefs that had been filed. To date, no supporting affidavits from Charles Mast or any other juror have been submitted, nor has the defendant made any request for a hearing to establish the circumstances surrounding the alleged unauthorized communication.

■ The Court agrees with the defendant's assertion that in a criminal case any unauthorized communication, contact, or tampering with the jury during its deliberations raises a rebuttable presumption of prejudice. Nor is there any dispute that once such contact has been shown a heavy burden rests upon the Government to establish that it was harmless to the defendant. Remmer v. United States, 347 U.S. 227, 229, 74 S. Ct. 450, 451, 98 L.Ed. 654 (1954), 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (1956); Wheaton v. United States, 133 F.2d 522, 527 (8th Cir. 1943). In the present case, however, the record is barren as to what actually transpired due to the defendant's failure to request a hearing on the matter. In the absence of such a hearing this Court is not prepared to speculate as to the nature of the asserted comment or its effect upon the jury. The burden rests upon the defendant to demonstrate the existence of an unauthorized contact before the rule of presumptive prejudice will apply. Proof of the contact requires more than the mere affidavit of the defendant or his counsel. United States v. Gersh, 328 F.2d 460, 463–464 (2d Cir. 1964).

The defendant's remaining assignments of error have been considered by the Court and are deemed to be adequately covered by the Government's brief. The defendant's motion for a new trial is, therefore, denied.

---

5. "11. The defendant avers that a member or members of the jury after retiring and prior to announcing their verdict conferred with a Court Official believed to be a tipstaff, concerning their verdict, and particularly relative to any recommendations in connection therewith." Defendant's Motion for New Trial, 2.